IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS,
MARSHALL DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN | § | |
| AMERICAN CITIZENS, ET. AL. | § | |
| | § | CIVIL NO. 2:03-CV-354 |
| vs. | § | CONSOLIDATED |
| | § | |
| RICK PERRY, | § | |
| GOVERNOR OF TEXAS, ET. AL. | § | |

Before HIGGINBOTHAM, Circuit Judge, and ROSENTHAL and WARD, District Judges.

BY THE COURT:

We return to the map of congressional districts in Texas.  On June 28, 2006, the Supreme

Court vacated and remanded our prior decision, finding one district in violation of section 2 of the

Voting Rights Act.  With the election looming, we issued a scheduling order the next day directing

the parties and *amici* to submit proposed plans by Friday, July 14, 2006, with responses due one

week later.  We heard oral argument on Thursday, August 3, 2006.  The State of Texas asked us to

supply a plan by Monday, August 7, 2006.  At least fourteen competing maps were submitted for our

consideration.  We have adopted none of those maps but in Plan 1438C make changes necessary to

discharge the Supreme Court's mandate.

I

Our task is narrow: we must do no more than necessary to correct the flaws the Supreme

Court found in Plan 1374C — the plan duly enacted by the Texas legislature in 2003 and upheld by

this three-judge court in 2004.  The Supreme Court found that District 23 in Plan 1374C violated

section 2 of the Voting Rights Act.  The Court held that when District 23 was redrawn in 2003 to

enhance the political fortunes of Congressman Bonilla, the result impermissibly diluted Latino

voting strength in that district.  In particular, the Court faulted the way in which the Texas legislature accomplished that dilution by dividing Webb County through the City of Laredo, a "cohesive Latino community," removing half of Webb County from District 23 and placing it in adjacent District 28. The Supreme Court further found that the violation in District 23 was not remedied by the creation of a different Latino opportunity district — District 25 — that "winds its way from McAllen and the Mexican border towns in the south in Austin, in the center of the State and 300 miles away."  The Court concluded that the "enormous geographical distance separating the Austin and Mexican-border communities" and "the disparate needs and interests of these populations" made District 25 "noncompact for § 2 purposes" and ineffective to remedy the diminished Latino voting strength in District 23.[1]

Once the Supreme Court held that District 23 as drawn in Plan 1374C violated section 2 and recognized that the districts in south and west Texas -- including District 25 -- would have to be redrawn to cure the violation, it declined to define the limits of the newly articulated compactness test.  The Court recognized that District 25 was formed to compensate for the loss of District 23 as a Latino opportunity district and, with other districts in south and west Texas, would have to be changed once District 23 was redrawn to comply with section 2.  We turn now to that task.

II

To make District 23 an effective Latino opportunity district, consistent with the Supreme Court's direction, portions of Bexar County are added, which increases the number of Hispanic

---

[1] *League of United Latin Am. Citizens v. Perry*, 126 S. Ct. 2594, 2614-23 (2006).

voters in the district.[2]  This in turn requires that the Hill Country counties of Kerr, Kendall, Bandera,

and Real be placed in adjacent District 21, where three of the four had been before the legislature

enacted Plan 1374C in 2003.  These changes restore Latino voting strength to District 23 without

dividing communities of interest.

The Supreme Court recognized the cohesiveness of Webb County. The remedial map reunites

Webb County and places it entirely in  District 28, to the east of District 23.  New District 28

becomes a solid south Texas district, anchored by Webb County and its 193,000 persons. The

northern portion of new District 28 is generally the same as it was in the legislatively enacted Plan

1374C, and the southern portion generally contains the southern part of old District 25 from Plan

1374C.  New District 28 proceeds north from Webb County, adding La Salle, McMullen, Frio,

Atascosa, Wilson, and Guadalupe counties to the north, as well as a small portion of Bexar County.

The district includes Zapata, Jim Hogg, and Starr counties, as well as a portion of Hidalgo County,

to the south.

Redrawing District 23 and placing Webb County entirely in District 28 effectively responds

to the violations found by the Supreme Court.  District 23 is an effective Latino opportunity district

and Webb County is reunited in District 28, anchoring that  district in south Texas and avoiding an

elongated reach from the Rio Grande Valley to central Texas, 300 miles to the north.  We

considered, and rejected, placing all of Webb County in District 23.  Doing so would require changes

in a clockwise direction, leaving many counties in "south Texas" districts that would have to stretch

far north across large but sparsely populated areas to find enough people to satisfy the one man, one

---

Placing the southern part of Bexar County in the area defined by congressional District 23 is very similar to
the current State Senate District 19 in Plan 1188S.

vote requirement.  This problem is illustrated by Plan 1374C, which, even with half of Webb County in a "south Texas" district, was forced to connect voters in south Texas not only with voters in Bexar County (District 28) but also with voters in Travis County (District 25).  We are not persuaded that this is an appropriate response to the Supreme Court's decision.  The clockwise movement that would be necessitated by placing Webb County in District 23 frustrates the correction of noncompact "bacon strip" districts.  This clockwise movement would also push District 25 from Travis County, contrary to an aspect of the legislative plan that the Supreme Court did not invalidate.  Moving a reunited Webb County into new district 28, on the other hand, effectively corrects the section 2 violation and addresses the Supreme Court's compactness concerns.

Anchoring new District 28 in south Texas, and specifically in Laredo, naturally results in a new District 25 that is moved north, implementing the redistricting principle of compactness and respecting communities of interest.  With the southern portion of old District 25 placed in the south-Texas-based new District 28, the northern portion of District 25 needed additional population to meet the one man, one vote requirement.  Much of that population is found in Travis County and specifically in Austin, making new District 25 a compact Austin-based district.  It runs to the south and east, picking up Hays, Caldwell, Gonzales, Bastrop, Fayette, Colorado, and LaVaca counties.

With new District 25 now based in Travis County, we were respectful of the legislature's decision to divide the county in the 2003 legislatively enacted plan.  That plan divided Travis County into three separate districts:  District 10, District 21, and District 25.  Our remedial plan maintains this three-way split, although District 25 takes in an additional part of Travis County, as required to meet the one man, one vote standard.  With District 10 untouched, that standard required District 21

to lose population, which was accomplished by removing a portion of Travis County and joining it with the part of Travis County already in District 25 in Plan 1374C.

As the Supreme Court recognized, redrawing District 23 and  reunifying Webb County required changes to other districts in south and west Texas.  These districts were elongated in the legislative plan in 2003 as a consequence of the decision to redraw District 23 to make Congressman Bonilla's reelection more likely.  There is little question but that the fracturing of communities of interest found by the Supreme Court was a hand-in-glove companion to the effort to enhance Congressman Bonilla's support in District 23.  The elongation of Districts 28, 25, and 15 to comply with the one man, one vote requirement was a consequence of the redrawing found to violate District 23, if not a means to that end.  Just as the 2003 redrawing of District 23 changed the shape of the districts to the east, the Supreme Court's instruction to change District 23 again requires that those districts be redrawn.  The changes to District 23 made it necessary to change Districts 28 and 25, which in turn requires modest changes to District 15.  To equalize population, a portion of Hidalgo County is moved from old District 28 to the south part of new District 15 and counties in the northern part of old District 15 are moved to new District 25.  The resulting improvement in the compactness of District 15 was not the object but an incidental product of remedying the flaws identified by the Supreme Court.  New District 15 remains anchored in Hidalgo County and runs north, taking in Brooks, Duval, Jim Wells, Live Oak, Bee, San Patrico, Refugio, Goliad, Karnes, and De Witt counties.

New District 23 continues to stretch east from El Paso County in far west Texas to Bexar County.  Linking voters in El Paso County and Bexar County is inevitable, given the strictures of one man, one vote and the demography and geography of south and west Texas.  El Paso County

contains 679,522 persons, exactly 28,003 persons over the one man, one vote limit.  District 16, untouched under our remedial plan as it must be, starts at the far western tip of El Paso County and moves east until it picks up 651,519 voters — all it can.  The remaining 28,003 people must be put into some other district.  Our remedial plan combines these voters with a significant portion of voters in Bexar County.  The geographical distance between these two groups of voters is unavoidable.  It is neither a product of the illegality found by the Supreme Court nor caught up in its remedial wake.

III

Our remedial plan satisfies the requirements of section 2 of the Voting Rights Act.  We previously held that Plan 1374C contains six Latino opportunity districts and that seven reasonably compact districts could not be drawn.  The Supreme Court affirmed that conclusion.  Our remedial plan contains six Latino opportunity districts.  Three Latino opportunity districts were not touched: District 16 (in El Paso County); District 20 (in Bexar County); and District 27 (in south Texas).

New Districts 23, 28, and 15 are effective Latino opportunity districts.  District 23 has a 57.4% HCVAP; District 28 has a 67.8% Hispanic Citizen Voting Age Population; and District 15 has a 69.1% HCVAP.  Further confirmation that new District 23 meets the requirements of the Voting Rights Act is found in the fact that the HCVAP is very similar to what it was in the court-drawn plan from 2001 that the Supreme Court affirmed.  District 23 under the court-drawn plan had a 57.5% HCVAP.  In addition to the HCVAP numbers, the underlying data from the statewide elections supports the conclusion that new District 23 will perform as an effective Latino opportunity district.

IV

That this remedial order makes changes in the lines of five districts, as few as possible consistent with conscientious partisan neutrality, is not the product of aggressive remediation. Rather, it is the consequence of an aggressive map, which resulted in the section 2 violation the Supreme Court found.  Under Plan 1438C, all incumbents may run in their old districts, as altered here.  Each incumbent shares party membership with a comfortable level of voters, District 23 is returned to the competitive level of District 23 under the 2001 plan, which the Supreme Court affirmed.  Districts 28, 25, and 15 regain the compactness they lost in the 2003 legislative effort to enhance Republican strength in District 23, which the Supreme Court found violated section 2. This map corrects the violation, makes the adjustments that flow from that correction, and stops.

By separate order, the boundaries of congressional districts 15, 21, 23, 25, and 28 are redrawn in Plan 1438C to comply with the Supreme Court's mandate.  All other congressional districts as enacted by Chapter 2, Acts of the Texas Legislature, 3rd Called Session, 2003, remain unchanged.  A special election will be held concurrently with the general election on November 7, 2006.